IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82346-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| GREENFIELD, CHRISTIAN JAMES, | ) | UNPUBLISHED OPINION |
| DOB: 10/21/1972, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Christian James Greenfield appeals his sentence for possession of a stolen vehicle and theft of a motor vehicle. He argues we should remand his case for resentencing because the court failed to follow the procedural requirements of the parent offender sentencing alternative (POSA) statute, RCW 9.94A.655, in determining whether a POSA was an appropriate sentence for him and abused its discretion in denying the POSA. He also argues the court erred by imposing discretionary legal financial obligations (LFOs), interest on nonrestitution LFOs, and a community custody condition requiring that he "[s]tay out of drug areas." We reject Greenfield's challenge to the denial of his request for a POSA, but remand for the trial court to strike the community custody fees and interest on nonrestitution LFOs and either strike or clarify the community custody condition.

FACTS

Greenfield pleaded guilty to one count of possession of a stolen vehicle and one count of theft of a motor vehicle in July 2018.  The court set a sentencing date in September 2018.  But at the September hearing, defense counsel explained that Greenfield was in a drug treatment program and asked the court to schedule a January 2019 hearing to enter an order for a drug offender sentencing alternative (DOSA) evaluation.  The court agreed.

At the January 2019 hearing, the court ordered the Department of Corrections (DOC) to prepare a DOSA risk assessment report.[1]  Defense counsel also asked the court to order a POSA evaluation because Greenfield was helping care for his son when he committed the crimes in 2017.  Greenfield's son was the subject of an open child welfare case and currently in the custody of Greenfield's mother.  The court ordered DOC to complete a POSA risk assessment report and to "obtain the appropriate documentation" from the Department of Children, Youth, and Families (DCYF)[2] "regarding open welfare cases or prior substantiated referrals of abuse or neglect."  The court then continued Greenfield's sentencing several times for various reasons, mostly to allow Greenfield to complete services and to get status updates on his sobriety and custody case.

---

[1] That report is not at issue in this appeal.

[2] Throughout the record and briefing, the court and parties refer to the Department of Social and Health Services (DSHS) and DCYF interchangeably.  In 2017, the legislature created DCYF to assume the responsibilities of DSHS dedicated to the well-being of children, youth, and families, including those of the Children's Administration.  LAWS OF 2017, ch. 6.  Because DCYF is now the agency charged with those responsibilities, we refer to the departments collectively as DCYF.

DOC issued its POSA report in February 2019 and attached a "Child Welfare History" report from DCYF that summarized Greenfield's involvement in the child welfare system. By October 2019, the court had not yet sentenced Greenfield, so it ordered another POSA assessment. In December 2019, DOC issued an updated POSA risk assessment report and attached an updated Child Welfare History report from DCYF, dated October 31, 2019.

The court sentenced Greenfield in February 2021. It found that Greenfield was eligible for a POSA but determined that the alternative was not appropriate. The court expressed concern that while Greenfield had physical custody of his son most of the time, his mother had legal custody, and she did not believe it was safe for Greenfield to assume legal custody. It was also concerned about a recent "stumble" with treatment, leading to a relapse. As a result, the court imposed a prison-based DOSA, ordering that Greenfield serve 25 months' total confinement followed by 25 months of community custody. It found Greenfield indigent, so it ordered that Greenfield pay the mandatory $500 victim penalty assessment and waived all other LFOs. The court also ordered that Greenfield "[s]tay out of drug areas, as defined in writing by the supervising Community Corrections Officer" (CCO).

Greenfield appeals.

ANALYSIS

POSA Statute

Greenfield argues that the trial court erred because it "failed to follow the procedural requirements of the [POSA] statute" in determining whether a POSA

was appropriate for him.  He also argues the court abused its discretion in denying the sentencing alternative.

### A.  POSA Procedural Requirements

Greenfield argues that the trial court failed to follow the procedures required by the POSA statute because it did not "order and review a report authored by DCYF" explaining the status and circumstances of Greenfield's history with the child welfare system.  He asserts the court erroneously relied on the DOC risk assessment reports "as a stand in for the DCYF report."  The record does not support his claim.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, gives sentencing courts broad discretion to determine whether an offender is eligible for a sentencing alternative and whether the alternative is appropriate.  State v. Hender, 180 Wn. App. 895, 900-01, 324 P.3d 780 (2014).  A sentencing court's decision of whether to grant a sentencing alternative is generally not reviewable on appeal.  See State v. Grayson, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005) (challenging trial court's denial to impose a DOSA).

Still, a sentencing court must act within the strictures and principles of the SRA.  Grayson, 154 Wn.2d at 342.  So an offender may always challenge the procedure by which a court imposed a sentence.  Id.; Hender, 180 Wn. App. at 901; State v. Mail, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993).  Whether a court failed to follow a procedure required by the SRA is a question of law we review de novo.  State v. Jones, 172 Wn.2d 236, 242, 257 P.3d 616 (2011).

Under RCW 9.94A.655, a sentencing court may waive a standard-range sentence and impose a POSA for eligible offenders. Former RCW 9.94A.655(1) (2010)[3] establishes the POSA eligibility criteria. If an offender is eligible for a POSA, the court must also determine whether imposing the alternative "is appropriate." Former RCW 9.94A.655(4).

To "assist the court" in determining whether to impose a POSA, it "may order [DOC] to complete . . . a risk assessment report." Former RCW 9.94A.655(2). If the court is considering the alternative, it "shall request that [DOC] contact [DCYF] to determine if the agency has an open child welfare case or prior substantiated referral of abuse or neglect involving the offender." Former RCW 9.94A.655(3). If DOC learns the offender has an open case, it will ask DCYF to "provide a report to the court," including information about the legal status of the child, the length of DCYF involvement, the legal status of the case, the needs of the child, whether the offender cooperated with any ordered services, and whether the offender has been convicted of a crime against a child. Former RCW 9.94.655(3)(a).

Before sentencing Greenfield, the trial court twice ordered POSA risk assessment reports from DOC. Because the court was considering imposing a POSA and knew Greenfield's son was the subject of an open welfare case, it ordered DOC to "obtain the appropriate documentation from [DCYF] regarding

---

[3] The legislature amended the POSA statute in 2018 and 2020. LAWS OF 2018, ch. 58, § 45; LAWS OF 2020, ch. 137, § 2. "Sentencing courts must look to the statute in effect at the time the offender committed the current crime when determining the offender's sentence." State v. Smith, 130 Wn. App. 721, 728, 123 P.3d 896 (2005). Greenfield committed his crimes in 2017.

open welfare cases or prior substantiated referrals of abuse or neglect." In response to both orders, DCYF authored two Child Welfare History reports.

The February 2019 DCYF report describes the legal status of Greenfield's son as "Dependent," explaining that it placed him with Greenfield's mother on September 20, 2017 and that the custody case remains "open." The report also lists all of Greenfield's substantiated and unsubstantiated child welfare referrals since 2000. It details the grounds for each referral, the outcome of each investigation, Greenfield's cooperation in the investigations, and Greenfield's participation in services.

The second DCYF report from October 2019 provides the same information, including the "open" custody case, but reflects the child's current placement as "Trial Return Home." The report also shows a new referral from September 2019. The new referral alleges that Greenfield left his son "alone in the car for a long time" and notes that the "intake is still under investigation."

DOC timely provided the trial court with both POSA risk assessments and the attached DCYF reports.[4] And the court discussed the reports at several hearings before sentencing Greenfield. The record shows that the trial court followed the procedure required under former RCW 9.94A.655 before denying Greenfield's request for a POSA.

B. Abuse of Discretion

Greenfield argues that the trial court abused its discretion in denying his request for a POSA by "failing to follow the law[;] permitting speculation to take

_____

[4] Greenfield also attached DOC's February 2019 POSA report and DCYF Child Welfare History report to his sentencing memorandum.

6

the place of substantial evidence" that DCYF would have provided "had the court followed the statute and considered an updated child welfare evaluation."

A sentencing court abuses its discretion if it categorically refuses to exercise its discretion or relies on an impermissible basis for refusing to impose a sentencing alternative. Grayson, 154 Wn.2d at 341-42; State v. Osman, 157 Wn.2d 474, 482, 139 P.3d 334 (2006). "A court refuses to exercise its discretion if it refuses categorically" to impose a sentence "below the standard range under any circumstances." State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).[5] A court relies on an impermissible basis in denying a sentencing alternative when "it refuses to consider [a sentence] request because of the defendant's race, sex or religion." Id.; see also Osman, 157 Wn.2d at 482 n.8 (impermissible bases for a court's denial of a special sex-offender sentencing alternative include the defendant's race, sex, or religion); State v. Sims, 171 Wn.2d 436, 445, 256 P.3d 285 (2011).

When denying Greenfield's request for a POSA, the court stated:

The grandmother, who has legal custody under the third-party custody action, has indicated that she herself doesn't think that it's safe allowing the child to be legally placed back with the father. Because of the status of the third-party custody action and [DCYF] being aware of that in resolution of the case, this Court is absolutely convinced if that evaluation was updated at this point there would be an objection based on his history. . . .
. . . But I give you and I commend you for the improvements that you've made in relation to your life. It's unfortunate that you did stumble and relapse when you did. Ultimately, I think that the

---

[5] Garcia-Martinez involved a challenge to a trial court's denial of an exceptional sentence. 88 Wn. App. at 326. In Grayson, our Supreme Court extended the holding in Garcia-Martinez to a court's categorical refusal to exercise its discretion in considering the defendant's request for a DOSA. 154 Wn.2d at 342.

appropriate sentence in this case is to grant the request for the prison-based DOSA.

As much as Greenfield argues the court failed to "follow the law" by not ordering a third DCYF report before denying his request for a POSA, he is incorrect. The statute contemplates only one report. Former RCW 9.94A.655(3). Even so, the court reviewed two DCYF reports before concluding a POSA was not appropriate.

And Greenfield fails to show that the court relied on "unsupported fact" or an impermissible basis in denying his request. The record shows that the court considered several factors in concluding that a POSA was not an appropriate sentence. The court continued Greenfield's sentencing at least 10 times between September 2018 and February 2021—nearly two and a half years—to assess his ability to maintain sobriety and comply with treatment. In that time, Greenfield admitted to relapsing in January 2019 and again in January 2020 by using methamphetamine. The court also received regular updates on the current custody status of Greenfield's son. And the court reviewed both DOC risk assessment reports with the attached DCYF child welfare reports. Finally, at sentencing, the court heard testimony from Greenfield's mother Linda Greenfield and his friend Jason Twigg-Claggett. Ultimately, the court determined that because of the pending custody status with Greenfield's mother and her claim that it was not safe for Greenfield to have legal custody of his son, as well as Greenfield's treatment relapses, a DOSA was a more appropriate sentence.

The court did not abuse its discretion in denying Greenfield's POSA.

LFOs

Greenfield argues that "[t]he record shows the court intended to impose only mandatory LFOs," but a "boilerplate section of the judgment and sentence" erroneously imposes the cost of supervision. The State concedes that we should remand and instruct the trial court to strike community custody supervision fees. We accept the State's concession.

At sentencing, the court ordered, "On each case I will impose the $500 victim penalty assessment. I'll reserve restitution. I'll find that you're indigent, [and] waive the other financial obligations in the case." But Greenfield's judgment and sentence orders him to "pay supervision fees as determined by DOC." Because supervision fees are discretionary and the record shows that the trial court intended to impose only mandatory LFOs, we remand to strike those fees. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020); see RCW 9.94A.703(2)(d).

Greenfield also argues that his "judgment and sentence must be amended to state that non-restitution [LFOs] will not accrue interest." The State concedes this issue as well. Again, we accept the State's concession.

Under RCW 10.82.090(1), "restitution imposed in a judgment shall bear interest from the date of the judgment until payment, at the rate applicable to civil judgments." But "[a]s of June 7, 2018, no interest shall accrue on nonrestitution [LFOs]." Id. Greenfield's February 4, 2021 judgment and sentence orders that the LFOs "imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments." We

remand for the court to modify the interest provision and strike any interest accrued to date. State v. Catling, 193 Wn.2d 252, 259 n.5, 438 P.3d 1174 (2019) (remedy for interest imposed on nonrestitution LFOs is remand with direction to revise the judgment and sentence to eliminate interest on those LFOs).

Community Custody Condition

Greenfield argues that we must remand to strike his "[s]tay out of drug areas" condition of community custody because it is unconstitutionally vague. The State concedes that the condition as currently drafted "is unconstitutionally vague" but contends that we should remand and instruct the trial court to strike or clarify that condition. We agree with the State.

We review community custody conditions for an abuse of discretion and reverse only if they are manifestly unreasonable. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). Imposing an unconstitutional condition is always manifestly unreasonable. Id.

The due process guarantee of the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution require that citizens have fair warning of proscribed conduct. State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). Laws must (1) provide ordinary people fair warning of proscribed conduct and (2) have standards definite enough to protect against arbitrary enforcement. Irwin, 191 Wn. App. at 652-53. "A community custody condition is unconstitutionally vague if it fails to do either." Id. at 653.

The condition to stay out of drug areas does not give ordinary persons fair warning of the proscribed conduct. As Greenfield points out, the definition of a

"known drug area" is subject to broad interpretation. It could range from a city, to a neighborhood, to a block, or to a specific apartment building or house. Although Greenfield's CCO could define "known drug area," that definition could lead to arbitrary enforcement prohibited under the second prong of the vagueness test. See Irwin, 191 Wn. App. at 655 (concluding that a CCO could define a condition requiring the defendant to avoid locations where " 'children are known to congregate' " for the defendant to have sufficient notice of what conduct is proscribed, but it would leave the condition vulnerable to arbitrary enforcement). We remand for the court to either strike or clarify the condition.

We reject Greenfield's challenge to the trial court's denial of his request for a POSA. But we remand for the court to strike the community custody supervision fees and interest on nonrestitution LFOs from Greenfield's judgment and sentence and for the court to either strike or clarify the "[s]tay out of drug areas" community custody condition.

Brumm, J.

WE CONCUR:

Andrus, C.J.          Dwyer, J.

11